STATE EX REL. WISCONSIN BRIDGE & IRON COMPANY and others, Plaintiffs, vs. SULLIVAN, Circuit Judge, and others, Defendants.

*September 12—October 10, 1944.*

For the plaintiffs there was a brief by *Fred R. Wright* of Milwaukee, attorney, and *Hill, Beckwith & Harrington* of Madison of counsel, and oral argument by *Mr. Wright* and *Mr. John T. Harrington.*

For the defendants there was a brief by *Charles D. Ashley* and *George A. Gessner,* both of Milwaukee, and oral argument by *Mr. Gessner.*

WICKHEM, J.   Walter T. Curtis and Nellie T. Curtis, defendants here, commenced an action in circuit court for

Milwaukee county against Wisconsin Bridge & Iron Company, Arthur L. Riemer, and Joseph A. Schoenecker. Accompanying the summons were, (1) a notice of examination of Arthur L. Riemer and Edmund F. Barkow, the latter being identified as secretary of Wisconsin Bridge & Iron Company; (2) an affidavit of discovery by George A. Gessner, one of the attorneys for the Curtises; (3) a subpœna *duces tecum* to Arthur L. Riemer, individually and as president "and/or" treasurer of Wisconsin Bridge & Iron Company; and (4) a subpœna *duces tecum* to Edmund F. Barkow, as secretary of Wisconsin Bridge & Iron Company. It is the foregoing subpœnas that plaintiff sought to suppress in the lower court and to the same end they prosecute their action in this court for a writ of prohibition.

The affidavit of discovery states that the object of the action is "to recover damages sustained by plaintiffs as the result of fraud of defendants in connection with the sale by plaintiffs of one hundred twenty (120) shares of the common stock of the defendant, Wisconsin Bridge & Iron Company, owned by plaintiffs; that discovery is necessary . . . as to certain facts within the knowledge of said persons and not within plaintiffs' knowledge, in order to enable the plaintiffs to prepare their complaint herein."

The affidavit lists the points on which the discovery is sought as follows:

1. The activities of plaintiff, Arthur L. Riemer, relative to the retirement of defendant, Walter T. Curtis, and the disposition of said one hundred twenty shares of the common stock of said company.

2. The corporate activities of plaintiff corporation relative to the same matter.

3. The activities of other officers and employees of plaintiff company relative to the same matters.

4. The activities of plaintiffs, Riemer and Schoenecker, in acquiring outstanding common stock of the company.

5. The financial condition and the business operations, profits, and prospects of the company, both before and after the sale by defendants of the said shares of stock.

The subpœna served upon Riemer requires production, (1) of all letters and correspondence between the company and Curtis, individually and officially, with Alex D. Mayer relative to the retirement of Curtis as an employee of the company and relative to the disposition, assignment, or ownership of the one hundred twenty shares of stock owned by Curtis; (2) all canceled checks and orders for the payment of money signed by Riemer, individually or as an officer of the company, wherein money was made available to Walter or Nellie Curtis or made payable to Alex D. Mayer incidental to the disposition of the said one hundred twenty shares of stock; (3) all books of account of the company containing entries of money paid by or to the company as an incident to the transfer of one hundred twenty shares of stock owned by Curtis; (4) Riemer's individual books of account showing entries of money paid by or to Riemer incidental to the transfer of one hundred twenty shares of stock; (5) all written agreements and memoranda, individually or officially, between Riemer and Alex D. Mayer or any other persons relative to the disposition of the stock; (6) copies of the state and federal income and capital-stock tax of the company for the years 1936 to 1942; (7) general ledger and all books of original entry of the company from 1936 to 1943; (8) originals of the master copies of financial statements and announcements to stockholders of the company from 1939 to date; (9) corporate records of the company showing payments of dividends on preferred and common stock from January 1, 1936, to date.

The subpœna served upon Barkow called for production, (1) of all copies of letters and other communications between Barkow as secretary of the company or between any other officer of the company and either Curtis or Mayer relative to the subjects mentioned in the other subpœna; (2) all stock-

books and all stock-transfer records of Wisconsin Bridge & Iron Company; (3) certificate or certificates, canceled or uncanceled, of stock evidencing the one hundred twenty shares of common stock of the company owned by the Curtises and the rider or riders attached and incidental thereto; (4) all written agreements and memoranda between Wisconsin Bridge & Iron Company and Walter T. Curtis "and/or" Nellie T. Curtis "and/or" Alex D. Mayer, relative to the disposition, distribution, allocation, subsequent transfers of this stock; (5) corporate minutes of stockholders and directors of Wisconsin Bridge & Iron Company from 1939 on; (6) original or copies of financial statements to stockholders; (7) corporate records of the company showing declarations and payments of dividends on preferred and common stock from January, 1936, to date; (8) all written bids and commitments, and all contracts submitted, received, or executed or performed by the company in the operation of its business from January 1, 1939, to date.

The trial court declined to suppress the subpœnas and held that books and documents specified in the Riemer subpœna under paragraphs 1, 2, 3, 4, 5, 8, and 9 may be relevant and should be produced and that 6 and 7 should not be produced. In the Barkow subpœna, No. 8 was excluded and the production limited to the papers and documents set forth in paragraphs 1 to 7, inclusive, with the limitation that the first six paragraphs should include only documents containing statements to persons other than plaintiffs.

The attack upon these proceedings by plaintiffs is based on the claim that there is no showing in the affidavit of any privity of contract with, or any fraud by plaintiffs, and that no transaction is asserted out of which fraud could arise. Most of the attack centers upon failure of the affidavit to name the vendee of the stock. It is not asserted by the affidavit that the stock was sold to any of the plaintiffs. There are cryptic references to an A. D. Mayer who is not connected by the affidavits with plaintiffs or stated to have been the vendee of the

stock. There was introduced into the record by plaintiffs, however, documentary evidence to the effect that Mayer was in fact the vendee of the stock by the sale referred to in the affidavit.

The plaintiffs here contend that the subpoenas subject the Wisconsin Bridge & Iron Company to a shocking inquisition without any right of inquiry having been established. We are solely concerned here with the sufficiency of the affidavit to establish defendants' right under the statute to a discovery in aid of pleading. We are not concerned with the proper scope of the subpoenas *duces tecum* or the propriety of the order putting limitations thereon.

The examination was sought under sec. 326.12 (4), Stats., the material portion of which reads:

"If discovery is sought, to enable the plaintiff to frame a complaint, the notice of taking the examination shall be accompanied by the affidavit of himself, his attorney or agent, stating the general nature and object of the action or proceeding; that discovery is sought to enable him to plead, and the subjects upon which information is desired."

This court in several cases has called attention to the drastic nature of this provision. Thus, in *State v. Milwaukee E. R. & L. Co.* 136 Wis. 179, 192, 116 N. W. 900, where the examination was refused because of want of authority to bring the action, the court said:

"The right to call men to the witness stand and examine them as to their private affairs is a most serious invasion of their liberties, if not indeed a deprivation of property in many cases (*Phipps v. Wis. Cent. R. Co.* 133 Wis. 153, 113 N. W. 456), and can be justified only on the ground that courts are entitled to the information in aid of a proper judicial proceeding."

On the other hand, it has been pointed out in several cases, and notably in *Singer Sewing Machine Co. v. Lang,* 186 Wis. 530, 536, 203 N. W. 399, that the statute is a "remedial and

highly beneficial statute and one liberally to be construed." In Schmidt v. Menasha Wooden Ware Co. 92 Wis. 529, 532, 66 N. W. 695, it is said that "It may be that upon examination of the defendants the plaintiff will find that there is no ground for charging the defendants with fault, and expensive litigation may thus be avoided."

It is evident that the section should be administered with both considerations in mind, namely, the adverse party should not be subjected without adequate reason or upon inadequate showing to an inquest into his private affairs and, on the other hand, the party who seeks to plead should be able upon a proper showing to get such information as will enable him to plead a cause of action if he has one.

Thus, the court has held in numerous cases that the affidavit need not set forth facts sufficient to constitute a cause of action or even disclose that plaintiffs should know a cause of action existed. *Gratz v. Parker,* 137 Wis. 104, 118 N. W. 637; *Singer Sewing Machine Co. v. Lang, supra; Sullivan v. Ashland L., P. & St. R. Co.* 152 Wis. 574, 140 N. W. 316; *American Food Products Co. v. American M. Co.* 151 Wis. 385, 138 N. W. 1123. It was also held in *Sullivan v. Ashland L., P. & St. R. Co., supra,* that it is not a valid objection that the affidavit shows plaintiff to have enough information to draw some kind of a complaint in very general terms. On the other hand, if, as in *Ellinger v. Equitable L. Assur. Soc.* 138 Wis. 390, 120 N. W. 235, it appears from the affidavit that plaintiff has enough information accurately to draw a proper complaint, a discovery in aid of pleading will be denied. It is strongly indicated in the *Sullivan Case, supra,* that there must be enough stated in the affidavit to show that plaintiff *may* be able to recover against defendant. When from the statement of the nature and object of his action it affirmatively appears that the party has no cause of action, an examination under the statute will be denied him. *American Food Products Co. v. American M. Co., supra; State v. Milwaukee E. R. & L. Co., supra;* and *Schultz v. Strauss,* 127 Wis. 325, 106 N. W. 1066.

The foregoing review of the authorities (omitting one case, strongly relied on by defendants and later to be discussed) offers a sufficient basis for analyzing the facts of this case. The affidavit here does not state a cause of action for fraud nor is it necessary for a discovery that it do so.

The transaction out of which the fraud is supposed to have arisen is identified as a sale of one hundred twenty shares of stock in the Wisconsin Bridge & Iron Company by defendants to somebody, and fraud on the part of plaintiffs in connection with this sale is asserted. Defendants failed, however, to identify the vendee of the stock. To what extent does this affect the situation? Defendant contends that *Stott v. Markle,* 215 Wis. 528, 255 N. W. 540, is authority for their position. The proceedings there were somewhat similar, in that fraud was alleged in connection with the sale of stock, but there the corporation whose officers were being asked to produce books was the vendor of the stock, and the connection between the fraud and a vendor would certainly leap to the mind very much readier than it does here. Here, while the vendee is not named, the time of the transaction, the quantity of stock sold, and the identity of the vendor are disclosed, and we consider that this is sufficient unless it is true as a matter of law that had the vendee been disclosed and had he turned out, as appears to be the fact, to have been wholly unconnected with plaintiffs, no fraud on the part of plaintiffs could have affected the sale or given rise to any cause of action for damages. We apprehend that this claim cannot be made. That there could be fraud on the part of the corporation and its officers in manipulating stock, or in arranging corporate affairs so as to affect the value of the stock in order to depress its sale price, and that this could be redressable in damages, seems obvious enough. Defendants are entitled to know what happened, and it is not a fatal objection that the affidavits do not disclose Mayer to have been the vendee. Had this disclosure been made, the situation would not have been importantly changed.

We are therefore of the view, (1) that the affidavit, while not sufficient to state a cause of action, does state sufficiently the nature of the action, and (2) that there are no facts disclosed in the affidavit which indicate as a matter of law that defendants have not or could not have a cause of action against plaintiffs.

That ends the inquiry in the present case. As heretofore stated, we are not concerned with the scope of the subpœna *duces tecum*.

*By the Court.*—Writ denied.