## ROPER v. CROSIER et al.

No. 2889.   Decided June 28, 1917.   (167 Pac. 808.)

1. VENDOR AND PURCHASER—RECOVERY OF MONEY PAID—FRAUD. In an action by plaintiff to recover for amounts paid and land conveyed in satisfaction of a contract for the purchase of orchard land, evidence *held* insufficient to show that certain defendants, though they participated in the organization of the corporation, which owned no such land and had small assets, were parties to the fraud. (Page 268.)

2. VENDOR AND PURCHASER—RECOVERY OF MONEY PAID—FRAUD. Appellant and another organized a corporation having a capital stock of $1,000, which was practically all held by appellant and one associate. They proceeded to advertise that the corporation was the owner of valuable orchard lands, and offered them to the public. Appellant's associate interested plaintiff inducing her to enter into a contract for the purchase of several acres of orchard land. Pursuant to the contract, plaintiff made some cash payments, and transferred valuable land to appellant's associate in satisfaction of the contract. Appellant knew of the transaction, and knew that the corporation had no assets, and in fact admitted that he was the corporation. *Held* that, though he did not receive the proceeds from plaintiff's land, or her cash payment, appellant was liable to plaintiff in an action to recover the same. (Page 268.)

Appeal from District Court, Sixth District; *Hon. Joseph H. Erickson,* Judge.

Action by Pricilla Roper against A. J. Crosier and others. Judgment for plaintiff. Certain defendants appeal.

AFFIRMED as to A. J. Crosier; REVERSED as to Maggie Crosier and others.

*M. E. Wilson* for appellants.

*D. H. Wenger* for respondent.

CORFMAN, J.

This was an action instituted in the district court of Salt Lake County by the plaintiff to recover from the defendants $2,500 alleged to have been paid by the plaintiff to apply on orchard land contracts with a corporation organized by the defendants. A change of venue was had to the district court of Sevier County, where a trial to the court, without a jury, resulted in a judgment in plaintiff's favor against all of the defendants. The defendants, other than J. H. Nelson, appeal from the judgment.

The amended complaint in substance alleges:

"That the defendants, on or about the 22d day of August, 1910, entered into an alleged agreement to form and organize a corporation to be known as the Salina Orchard & Loan Company, and filed their articles of agreement with the secretary of state of the state of Utah on the 19th day of September, 1910, and on the same day the secretary of state issued a certificate of incorporation to the said Salina Orchard & Loan Company under the laws of the state of Utah. That the pretended business of the alleged corporation, according to the articles of agreement, was, among other things, to purchase, improve, and sell real estate. The articles further provided that the limit of the capital stock agreed upon was $1,000, consisting of 100 shares, of the par value of $10 per share, and that defendants subscribed for the whole thereof. In the articles A. J. Crosier was named as president, Carl Forshee as vice president, and J. H. Nelson as secretary and treasurer of said alleged corporation. That attached to and made a part of said alleged agreement are the affidavits of A. J. Crosier, Maggie Crosier, and Carl Forshee that not less than 10 per cent. of the capital stock of the corporation had been

paid. That the right of said corporation to do business in the state of Utah was annulled and its charter revoked by the Governor of the state of Utah on the first Monday of April, 1913, under the provisions of the act of the Legislature of the state of Utah (chapter 106 of the Laws of Utah of 1909). That the company was not incorporated in good faith by the defendants, that no directors' meetings as such were ever held, and the corporation was merely a dummy, to shield the collusive, fraudulent, and deceitful transactions of the defendants, as hereinafter alleged, who were the promoters, stockholders, and directors of said alleged corporation. That the corporation never was solvent, never owned any property of any kind, and never had any legitimate resources. That at various times prior to the 15th day of February, 1911, at Salt Lake City, Utah, the defendants, pretending to act as such directors and officers of said alleged corporation, fraudulently, with the intent to induce the plaintiff to purchase purported orchard land from said alleged corporation at a high price, did falsely and fraudulently publish, advertise, aver, and represent to the public at large, and to this plaintiff, that the corporation owned and controlled a large tract of land, and that the corporation was solvent, whereas, in truth and in fact, the said alleged corporation did not then and never owned or controlled any orchard land, or any other land of any class, kind, or description, all of which the defendants well knew, and that said representations were made by the defendants for the purpose of deceiving the public and this plaintiff. That on or about the —— day of February, 1911, plaintiff, relying on, confiding in, and believing said representations so made by the defendants, went to the county of Sevier to inspect said orchard lands, and was by the defendants shown some orchard land that the defendants falsely and fraudulently represented to this plaintiff that the alleged corporation owned and controlled the same. That the defendants then and there well knew that said corporation did not own or control the same, or any part thereof. That the plaintiff, confiding in and believing said representations to be true, agreed to purchase ten acres of said alleged orchard land

from said corporation through its officers, defendants herein, and thereafter on the 15th day of February, 1911, was induced to and did enter into ten alleged contracts, numbered 30 to 39, both inclusive, for the purchase of ten acres of orchard land in tracts of one acre each, including water, at the rate of $550 per acre, payable in monthly installments of $6 per month, without interest or taxes, all of said contracts being in the same language, tenor, and effect. That the said contracts in behalf of said alleged corporation were signed, executed, and delivered by the said A. J. Crosier as president and the said J. H. Nelson as secretary, and the defendants in each of said alleged contracts represented as follows: 'Second. (a) That the said acre of orchard is a unit of a large tract of land owned and controlled by the within company. (b) That the said acre shall be planted in the season of 1911 to commercial apples, and shall be cared for by the company for a period of five years from the date of planting. (c) That all trees dying within five years from the date of planting shall be replaced at the expense of the company. * * * Fourth. That the deed for the acre of land purchased by the holder of this contract shall be placed in escrow with the Mt. Pleasant Commercial & Savings Bank, at Mt. Pleasant, Utah.' That said representations, conditions, and promises so made in each of said contracts were false, fraudulent, all of which the defendants well knew, and were made for the purpose of cheating and defrauding this plaintiff. That the company did not then, or at any other time, own any orchard or other land, and that by reason thereof the conditions in said contract could not be complied with by said company. That the plaintiff, confiding in and relying on said representations so made by the defendants, was induced to accept said contracts and agreed to pay for said alleged land, believing she was buying orchard land from said corporation. That plaintiff paid to said defendants the initial payment of $6 on each contract according to the terms thereof, amounting to the sum of $60, and did enter into a further agreement with the defendants, who were pretending to act as such officers of said corporation on the 20th day of February, 1911, by the terms of which the plaintiff

was to and did convey to the defendant J. H. Nelson by a good and sufficient deed of conveyance, as she was informed and believed, for the use and benefit of the corporation, the following described real estate and premises, to wit: Lots 2 and 3 in L. H. Rockwell's First addition, a subdivision of lot 14, block 16, five-acre plat A, Big Field survey, in the city and county of Salt Lake, state of Utah, commonly known as No. 1399 McClelland avenue, for the agreed value of $2,500, for which amount said J. H. Nelson, as secretary and treasurer, acknowledged receipt, and for which amount the plaintiff was to have a credit on said alleged contracts with said alleged corporation, but which was appropriated to defendant's use. That in the month of October, 1911, the plaintiff first learned the truth in relation to said representations, promises, and agreements, and discovered that they were false and fraudulent, and that the alleged contracts were void, in that no real estate was described therein, and no deed placed in escrow as therein promised, and that the alleged company was not the owner of any orchard land, or any other land, and never had been such owner, and that the defendants induced the plaintiff to enter into said fraudulent contracts for the purpose of cheating and defrauding the plaintiff out of her money and property, and did so cheat and defraud the plaintiff, and the plaintiff received nothing for the money, amounting to $2,560, so paid to the defendants. That the plaintiff has frequently demanded of the defendants the return of the money so wrongfully obtained from the plaintiff by defendants, but that defendants have failed and neglected to pay the same. That there is due and owing from the defendants to the plaintiff the sum of $2,560, with interest thereon at the rate of 8 per cent. per annum from the 20th day of February, 1911.''

The answer of the defendants appealing denies generally all the allegations of the complaint, except it admits the organization of the corporation and that the defendants were the officers thereof. Briefly stated, the facts disclosed by the testimony at the trials show: That a few months after the corporation, Salina Orchard & Land Company, had been

formed by the defendants, with a limited capital of $1,000, of which 10 per cent. had been paid in, the defendant J. H. Nelson, the corporation's secretary and treasurer, called at the home of the plaintiff in Salt Lake City and solicited her to purchase lands, represented to be owned by the company, situated at or near Salina, Utah. That the plaintiff became interested and thereafter went to Salina, investigated the lands, and, after doing so, on the 15th day of February, 1911, entered into ten separate written contracts with the company, denominated "orchard purchasing and land contracts," providing for the purchase from the company by her of ten one-acre tracts of land at $550 per acre, payable in monthly installments of $6 per month on each contract. These contracts were signed on behalf of the company by the defendant A. J. Crosier as president and the defendant J. H. Nelson as secretary, and provided, among other things, that each acre tract called for therein was "a unit of a large tract of land owned and controlled by the within company." The contracts also provided that a deed should be placed in escrow for each acre tract with the Mt. Pleasant Commercial & Savings Bank at Mt. Pleasant, Utah, to be delivered to the purchaser upon final payment and discharge of the plaintiff's indebtedness to the company. Upon the execution and delivery of the contracts to the plaintiff, a receipt, signed by the defendants A. J. Crosier as president and J. H. Nelson as secretary, was given the plaintiff for $60, the initial payments on the ten contracts. On the 20th day of February, 1911, the plaintiff entered into a written agreement with the defendant J. H. Nelson, as secretary of the company, to convey to him certain real property situated in Salt Lake City for a consideration of $2,500, to be applied as first payments on the plaintiff's ten orchard contracts aforementioned, and thereafter, in pursuance of this agreement, on the 7th day of March, 1911, the plaintiff executed and delivered a deed to the defendant J. H. Nelson for her Salt Lake City real property, and later, by deed dated June 15, 1911, the defendants J. H. Nelson and Alice O. Nelson, his wife, conveyed the same to one J. F. Knowles and wife, of Salt Lake City. The testimony shows

that the defendant A. J. Crosier made some inquiry concerning the value of the real property thus conveyed by the plaintiff to the defendant J. H. Nelson, and asserted that Nelson wished to make a trade and take the plaintiff's property as part payment for the purchase price of some lands belonging to the Salina Orchard & Land Company. The plaintiff, after parting with her Salt Lake City property, in thus seeking to make payments on her orchard contracts, made investigation, and, in October, 1911, ascertained that the Salina Orchard & Land Company had no assets, and that it did not own or control any lands. The defendant A. J. Crosier then asserted that he in fact was the company; that he owned the land, and was prepared to make the company orchard contracts good, but complained that the defendant Nelson had failed to account for and turn over anything on account of having received a conveyance of the plaintiff's Salt Lake City property and disposing of it to third parties, and asserted that it was his understanding that under the terms of plaintiff's orchard contracts with the company they had become null and void by reason of the plaintiff's failure to make the monthly payments as called for in them. It further appears from the record of the testimony that the charter of the Salina Orchard & Land Company was declared annulled on the 2d day of April, 1912, by reason of the nonpayment of the annual license tax provided for under the Utah statutes.

While numerous errors are assigned concerning the admission of testimony over the objection of the defendants appealing, the more important, and we think the controlling, question to be determined on this appeal is whether or not the evidence was sufficient to justify the findings of the    1, 2 trial court and its rendition of judgment in favor of the plaintiff and against the defendants. It appears from the undisputed testimony that the defendants formed a corporation, ostensibly, at least, for the purpose, among other things, of purchasing, improving, and selling real estate, with a limited capital of $1,000 divided into 100 shares, of the par value of $10 each, of which the defendant A. J. Crosier subscribed for forty-eight shares, the defendant J. H. Nelson

forty-nine shares, and the other defendants one share each; that the company never held any meetings of its board of directors, or transacted business in its corporate capacity or otherwise, except through its president, the defendant A. J. Crosier, and its secretary and treasurer, the defendant J. H. Nelson. It further appears that the defendant J. H. Nelson, acting for the corporation, induced the plaintiff to enter into the contracts in question for the purchasing of the corporation orchard lands, for which she made the initial payments of $60 and thereafter conveyed to Nelson certain real property, which was receipted by Nelson to further apply as payments on those contracts. In these transactions it does not appear that the defendants Maggie Crosier, Carl Forshee, and Alice O. Nelson participated as officers or otherwise, except in the organization of the company, which, in itself, does not disclose any intendment of fraud or wrongful dealing on their part.

As to the defendants A. J. Crosier and J. H. Nelson, assuming to act as officers for the corporation in the making of the contracts with the plaintiff for the purchase of orchard lands of the Salina Orchard & Land Company, when it neither owned nor controlled any lands, or had any assets, we think the findings of the court are fully justified. True, the record here does not disclose that the defendant A. J. Crosier actually received the benefit of the plaintiff's payments of money and property; but the testimony conclusively shows that he was one of the prime movers in the forming of a corporation and in the making of the contracts as an officer with the plaintiff, wherein the plaintiff, in anticipation that she was to have and receive orchard lands, separated herself from her money and real property at a time when he knew, or at least it was his duty to know, that the corporation had nothing to give in return, unless he, as a promoter and officer, saw to it that the corporation was rendered capable of fulfilling its obligations to, and make good its undertakings with, the plaintiff. As stated by the authorities cited in appellant's brief, and particularly in 2 Thompson on Corporations, section 1283:

"The general rule as to trustees is that they are responsible only for their own acts, and not for the acts of each other, unless by express

agreement, 'or they have by their own voluntary co-operation or conni-
vance enabled the other to accomplish some known object in violation of
the trust.' ''

But when, as here, the defendant A. J. Crosier, as the evi-
dence conclusively shows, was actually participating in the
organization of a corporation wholly incapable of performing
its contracts entered into with the plaintiff by himself as an
officer, and then standing by, knowingly permitting the plain-
tiff to make in good faith payments to his co-officer to satisfy
her indebtedness to the corporation, he may not be heard to
say he received no actual benefits thereby, and the general
rule quoted does not apply; for, if it did, the corporate exis-
tence would become a mere cloak for its incorporators to prac-
tice fraud and deceit. 1 Beach, Priv. Corp. section 163;
*McGrew* v. *City Produce Exchange*, 85 Tenn. 572, 4 S. W. 38,
4 Am. St. Rep. 771; *Donovan* v. *Purtell*, 216 Ill. 629, 75 N. E.
334, 1 L. R. A. (N. S.) 176; *Heckendorn* v. *Romadka*, 138
Wis. 416, 120 N. W. 257.

Having carefully reviewed the record, we are of the opinion
that as to the defendant A. J. Crosier the judgment of the
trial court should be affirmed; as to the other defendants
appealing, we think the evidence is insufficient to support the
findings and judgment, and, as to them, the judgment should
be reversed. It is so ordered. Defendant A. J. Crosier to
pay all costs.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON,
JJ., concur.